2011 OK CIV APP 93

**The STATE of Oklahoma ex rel. Craig LADD, District Attorney, Plaintiff/Appellee,**

v.

**$457.02 in U.S. currency, Defendant,**

**and**

**Embry Jay Loftis, Appellant.**

**No. 107,350.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 13, 2011.

Craig Ladd, District Attorney, Timothy W. Burson, Assistant District Attorney, Ardmore, Oklahoma, for Plaintiff/Appellee.

Embry J. Loftis, Lawton, Oklahoma, Pro Se.

JOHN F. FISCHER, Vice Chief Judge.

¶1 Appellant Embry Jay Loftis appeals the denial of his motion for new trial in this forfeiture proceeding. Because the original judgment of forfeiture was entered by default, the State did not prove that the property seized was subject to forfeiture as required by statute. Therefore we find it was error to deny Loftis' motion for new trial and

we reverse and remand the case for further proceedings.

## BACKGROUND

¶ 2 On January 2, 2009, Loftis was charged with possession of a controlled dangerous substance in violation of 63 O.S. Supp.2004 § 2–402.[1] At the time of his arrest, Loftis had $457.02 in his possession. The Carter County district attorney filed a petition and notice of seizure and forfeiture with respect to this currency pursuant to 63 O.S. Supp. 2004 § 2–503(A)(6), (7).[2] Loftis filed his objection to the district attorney's petition on February 10, 2009, denying that the $457.02 was subject to forfeiture. The matter was set for trial at 10:00 a.m. on March 2, 2009.

¶ 3 The record shows that Loftis was treated for a gun-shot wound to his ankle on February 28, 2009, at the Mercy Memorial emergency room in Ardmore. He was released the same day and referred to a physician for further treatment. Loftis claims he was told to be at the doctor's office between 9:00 and 11:00 a.m. on March 2. Loftis states that at 8:45 a.m. on the morning of trial, he filed a motion for continuance. The record reflects the filing of the motion but not the time it was filed or delivered to the district judge. The motion represents that Loftis' doctor's appointment conflicted with the trial date, and that he had yet been unable to obtain evidence proving that he won the $457.02 at a casino. A minute entry reflects that Loftis failed to appear at the trial. When the case was called for trial, the district court ordered the money forfeited. A Journal Entry of Default Judgment filed March 18, 2009, reflects that when Loftis failed to appear for the scheduled trial on March 2, 2009, the district attorney requested a default judgment.

¶ 4 At some point between March 2 and March 13, 2009, Loftis was incarcerated in the Carter County Detention Center. He alleges that on March 26, 2009, he appeared for a preliminary hearing on his controlled dangerous substance charge. At that time, the district attorney dismissed the criminal case from which the $457.02 had been seized. Loftis contends that on the following day he met with the district attorney regarding the return of the $457.02 and was served with a copy of the March 18 Journal Entry of Default Judgment. Loftis filed a petition for a writ of *coram nobis* on March 30, 2009, in which he sought return of the $457.02. The district court found the requested *coram nobis* relief unavailable, but treated the request as a motion for new trial, which it denied on July 2, 2009. From that order, Loftis appeals.

## STANDARD OF REVIEW

¶ 5 "The meaning and effect of an instrument filed in court depends on its contents and substance rather than on the form or title given it by the author." *Whitehorse v. Johnson*, 2007 OK 11, n. 13, 156 P.3d 41. The district court correctly ruled that Loftis' request for *coram nobis* relief should be treated as a motion for new trial.[3] "A mo-

1. Amended by Laws 2009, HB 1707, ch. 306, § 1, eff. November 1, 2009.

2. Amended by Laws 2009, HB 2250, ch. 442, § 8, emerg. eff. July 1, 2009. The statute provides in part:
 A. The following shall be subject to forfeiture:
 6. All things of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of the Uniform Controlled Dangerous Substances Act, all proceeds traceable to such an exchange, and all monies, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of the Uniform Controlled Dangerous Substances Act;

 7. All monies, coin and currency found in close proximity to any amount of forfeitable substances, to forfeitable drug manufacturing or distribution paraphernalia or to forfeitable records of the importation, manufacture or distribution of substances, which are rebuttably presumed to be forfeitable under the Uniform Controlled Dangerous Substances Act. The burden of proof is upon claimants of the property to rebut this presumption.

3. " 'The office of the writ of coram nobis is to bring the attention of the court to, and obtain relief from, errors of fact, such as ... a valid defense existing in the facts of the case, but which, without negligence on the part of the

tion seeking reconsideration, re-examination, rehearing or vacation of a judgment or final order, which is filed within 10 days of the day such decision was rendered, may be regarded as the functional equivalent of a new trial motion, no matter what its title." *Horizons, Inc. v. Keo Leasing Co.*, 1984 OK 24, ¶ 4, 681 P.2d 757, 758–59. "A trial court's denial of a motion for new trial is reviewed for abuse of discretion." *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106–07; *Head v. McCracken*, 2004 OK 84, ¶ 2, 102 P.3d 670, 673; *Jones, Givens, Gotcher & Bogan, P.C. v. Berger*, 2002 OK 31, ¶ 5, 46 P.3d 698, 701. "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law . . . ." *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, ¶ 13, 171 P.3d 890, 895.

## ANALYSIS

■■ ¶ 6 Loftis' motion for new trial argued two points: (1) after dismissal of the criminal case, the State had no basis for forfeiting the $457.02; and (2) he was denied his right to due process prior to forfeiture of the $457.02. With respect to the first issue, Loftis is clearly wrong: "there is nothing in the [Uniform Controlled Dangerous Substances] Act which makes a subsection 2–503(A)(7)'s forfeiture dependent on an *in personam* criminal charge or conviction." *State ex rel. Campbell v. Eighteen Thousand Two Hundred Thirty–Five Dollars*, 2008 OK 32, ¶ 14, 184 P.3d 1078, 1081.[4] We do not reach Loftis' second issue because we find that

property seized during an arrest cannot be forfeited pursuant to 63 O.S. Supp.2010 § 2–506 [5] absent proof that the forfeiture is statutorily authorized.

■■■ ¶ 7 Section 2–506 of the Uniform Controlled Dangerous Substances Act (63 O.S. Supp.2010 §§ 2–101 to 2–608) directs any peace officer to seize any property described in subsection A of section 2–503. This subsection applies to the $457.02 seized in this case. Subparagraph F provides that if, after notice of seizure is given, the owner files a verified answer and claim to the property, the forfeiture proceeding shall be set for hearing. Subparagraph G of section 2–506 provides:

> At a hearing in a proceeding against property described in paragraphs 3 through 9 of subsection A or subsections B and C of Section 2–503 of this title, the requirements set forth in said paragraph or subsection, respectively, shall be satisfied by the state by a preponderance of the evidence.

We find no previous decision construing these requirements with respect to whether the State is relieved of its burden of proof if the property owner fails to appear at the forfeiture hearing. However, there is guidance provided in subparagraph E:

> If at the end of forty-five (45) days after the notice [of seizure] has been mailed or published there is no verified answer on file, the court *shall hear evidence* upon the

defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned.' It is a general rule that the writ will not be granted for newly discovered evidence going to the merits of the issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial." *People v. Tuthill*, 32 Cal.2d 819, 198 P.2d 505, 506 (1948) (citations omitted). Here, the "fact" of Loftis' conflicting doctor's appointment and the "fact" he claims to have won the money at a casino appear on the face of his motion for continuance. His request for *coram nobis* relief argues for another opportunity to present those facts and evidence to support his claims. The writ of *coram nobis* will not lie where the com-

plaining party knew the fact at the time of trial. *State v. Hudspeth*, 191 Ark. 963, 88 S.W.2d 858 (1935).

4. We address section 2–503(A)(7) because it requires the least restrictive showing of a nexus between the property seized and a crime authorizing forfeiture, "in close proximity to" versus used "to facilitate any violation." However, for the reasons stated in this opinion, forfeiture pursuant to either subparagraph 6 or 7 was not warranted in this case.

5. The 2007 version of the statute in effect at the time of these proceedings is identical in all material respects. Therefore, we will refer to the current version of the statute for convenience.

fact of the unlawful use and shall order the property forfeited to the state, *if such fact is proved.*

63 O.S. Supp.2010 § 2–506(E) (emphasis added). The disposition of this appeal requires construction of the cited statute. In doing so, "we are reminded that the law abhors forfeitures and statutes authorizing forfeiture of private property are to be strictly construed." *State ex rel. Redman v. $122.44,* 2010 OK 19, ¶ 16, 231 P.3d 1150, 1155.

 ¶ 8 "The primary goal of statutory construction is to ascertain and follow legislative intention." *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 13, 33 P.3d 302, 307. "The intent is ascertained from the whole act based on its general purpose and objective. In construing statutes, relevant provisions must be considered together whenever possible to give full force and effect to each." *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800, 803.

It is a familiar rule of constitutional and statutory construction that sections are to be construed so as to give effect to every part thereof, that each provision of a section should be construed so as to harmonize with all the others, yet with a view to giving effect to each and every provision insofar as it shall be consistent with a construction of the section as a whole; the presumption being that every provision has been intended for some useful purpose.

*Oklahoma Natural Gas Co. v. State ex rel. Vassar,* 1940 OK 137, ¶ 10, 101 P.2d 793, 796. "[S]tatutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits." *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n,* 1988 OK 117, ¶ 7, 764 P.2d 172, 179.

¶ 9 Reading sections 2–506(E) and (G) together, and harmonizing the two provisions with respect to hearing requirements for forfeiture proceedings, we find that, whether an answer is filed or not, the State must present evidence sufficient to convince the trier of fact that section 2–503 authorizes the forfeiture of the seized property. This construction avoids the absurdity of permitting the State to order the forfeiture of property claimed by the owner without any evidentiary showing, but requiring the State to prove entitlement to forfeiture of property to which no one claims ownership. Further, this interpretation is consistent with the Supreme Court's interpretation of one of the statutes on which the district attorney relies for forfeiture. Pursuant to subsection 2–503(A)(7):

[E]vidence that monies found in close proximity to any amount of a controlled dangerous substances possessed in violation of the Act *creates a presumption* that the monies are the proceeds from the distribution or manufacture of a controlled dangerous substance. Once the presumption arises, the person claiming the monies may rebut the presumption by showing that 'the forfeited currency bore no nexus to a violation of the Act,' or, in other words, that there is a legal source of the currency.

*State ex rel. Campbell,* 2008 OK 32, ¶ 12, 184 P.3d at 1081 (emphasis added). This provision requires proof by a preponderance of the evidence the property was seized while "in close proximity" to a controlled dangerous substance. *See* 63 O.S. Supp.2010 §§ 2–503, 2–506. "Once this onus is met the burden shifts to the claimant to rebut the statutory presumption." *State v. One Thousand Two Hundred Sixty–Seven Dollars,* 2006 OK 15, ¶ 26, 131 P.3d 116, 125–26. Here, however, there was no evidence offered at the March 2, 2009 trial that the $457.02 was found "in close proximity" to a controlled dangerous substance. Consequently, the presumption authorized by section 2–503(A)(7) never arose.

'Common experience' and 'the circumstances of life as we know them' also teach that some persons (particularly those without bank accounts) routinely carry large amounts of money for a variety of reasons that are perfectly legal. There is simply nothing illegal about having a large amount of money.

*State ex rel. Campbell,* 2008 OK 32, ¶ 9, 184 P.3d at 1087–88 (Reif, J., dissenting in part). Because no presumption of guilt[6] was associated with the $457.02, Loftis was not required to show a legal source for the currency whether he was present during the trial or not. An order of forfeiture may not be entered pursuant to 63 O.S. Supp.2010 § 2–506 by default as a result of the failure of the person claiming ownership of the property to appear at the forfeiture hearing. Therefore, the district court erred as a matter of law in denying Loftis' motion for new trial.

## CONCLUSION

¶ 10 The district attorney sought to have $457.02 taken from Loftis at the time of his arrest forfeited pursuant to 63 O.S. Supp. 2010 § 2–503(A)(6), (7). The matter was set for trial. When Loftis failed to appear at trial, the district attorney requested and was granted a judgment of forfeiture by default. We find that 63 O.S. Supp.2010 § 2–506 required the district attorney to present sufficient evidence to establish that the $457.02 was subject to forfeiture despite Loftis' failure to appear. Because judgment of forfeiture was entered by default, there is no evidence in the record showing that forfeiture was authorized by subparagraphs 6 or 7 of section 2–503(A). Therefore, it was error to deny Loftis' motion for new trial. The order of the district court is reversed and the case is remanded for further proceedings.[7]

¶ 11 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and WISEMAN, J., concur.

---

6. *See State ex rel. Campbell,* 2008 OK 32, ¶ 12, 184 P.3d at 1081.

7. Loftis filed a motion to retain this case pursuant to Oklahoma Supreme Court Rule 1.24, after it was assigned to this Court by the Oklahoma Supreme Court. That rule provides that every appeal will be assigned to the Court of Civil Appeals unless retained by the Supreme Court. Pursuant to paragraph b, a party may move the Supreme Court to retain the appeal. Because this case was assigned to this Court, it appears that Loftis' motion is moot. Nonetheless, a motion to retain is directed to the Supreme Court and this Court has no authority to decide Loftis' motion. Loftis also filed a "Motion/Suggestion" on August 19, 2010, that the Supreme Court deferred to the decisional stage. That motion is denied without prejudice. Loftis may assert his claim to the $457.02 in the district court on remand. With respect to the remaining relief requested in that motion, those matters are raised for the first time on appeal. "[I]t is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues." *Evers v. FSF Overlake Assocs.,* 2003 OK 53, ¶ 18, 77 P.3d 581, 587 (citing *Bivins v. State of Oklahoma ex rel. Oklahoma Mem'l Hosp.,* 1996 OK 5, ¶ 19, 917 P.2d 456, 464).